UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JEREMIAH JAMES PETLIG,

                Plaintiff,

    v.

SCOTT CARTER-ELDRED, et al.,

                Defendants,

CASE NO. C18-0721-MJP-MAT

REPORT AND RECOMMENDATION

INTRODUCTION

Plaintiff Jeremiah James Petlig, an inmate at Clallam Bay Corrections Center, proceeds pro se and *in forma pauperis* in this 42 U.S.C. § 1983 civil rights action. Plaintiff alleges deliberate indifference to his serious medical condition, ultimately diagnosed as acute appendicitis, during his confinement as a pretrial detainee at the King County Jail/Regional Justice Center (RJC). (*See* Dkts. 8, 10, 30-31.) The Court previously dismissed other claims raised by plaintiff against certain named defendants, but provided for service upon RJC Correctional Officer C. Harraway in relation to the deliberate indifference claim. (Dkts. 11 & 20.) Officer Harraway now moves for summary judgment with a revised motion applying the proper standard. (Dkt. 56.) Plaintiff opposes the summary judgment motion (Dkt. 61; *see also* Dkts. 38-39, 43-44, 46, 48-53.) The Court, having

REPORT AND RECOMMENDATION
PAGE - 1

reviewed the motion, all filings submitted in response and reply, and the remainder of the record, finds plaintiff's claim subject to dismissal on summary judgment.

## BACKGROUND

Records reflect plaintiff's most recent booking into the RJC in October 2017. (Dkt. 57, Ex. 1 at 3.) A log book documenting activity in RJC's E-Unit shows that, at 9:38 p.m. on February 12, 2018, Officer Harraway noted plaintiff's complaint of pain in his stomach and side and inability to stand straight, and notified Jail Health Services (JHS). (*Id*., Ex. 2 at 11.) JHS arrived "on deck" to see plaintiff at 9:46 p.m. (*Id*.)

Progress notes from a JHS nurse reflect plaintiff's report the pain started approximately three days prior and his statement, "I refused to fill out a kite because it takes to [sic] long to be seen here[.]" (*Id*., Ex. 4 at 1.) Plaintiff reported a twelve-year history of inguinal hernia, "off & on pain that usually resolves but never like this", a high level of pain when lying down and standing, eating and drinking okay until that day, a poor appetite, and one instance of vomiting that morning. The nurse recommended plaintiff be transferred via emergency medical services (EMS) to a medical facility for further evaluation and/or treatment. (*Id*., Ex. 2 at 11 and Ex. 4 at 1.) EMS arrived on deck at 10:27 p.m. and thereafter transported plaintiff to Valley Medical Center (VMC). (*Id*. and Ex. 3 at 2, 4 (Kent Fire arrived first, at 10:10 p.m. and requested "Tri-Med" to respond).)

VMC medical staff evaluated plaintiff at approximately 10:57 p.m., whereupon plaintiff reported a three-day history of abdominal pain and that he had "been somewhat nauseated but did eat dinner tonight around 6 PM." (*Id*., Ex. 5 at 1.) He received a diagnosis of acute appendicitis and an appendectomy in the early morning of February 13, 2018. (*Id*. at 3-6.) VMC staff found plaintiff stable post-operatively, provided an IV antibiotic, and, prior to his discharge on February

15, 2018, found his pain well controlled with oral pain mediation and plaintiff ambulating without discomfort. (*Id*. at 6.)

Plaintiff alleges he first informed Harraway he needed medical care due to extreme pain and feeling ill on February 10, 2018. (Dkt. 48 at 2.) He "was sweating and dizzy, [his] stomach hurt and [his] skin color would turn purple after touching it." (*Id*.) Plaintiff alleges Harraway failed to initiate a "medical status two" for emergency care or to log his request for care on that date, instead telling plaintiff he looked cold and should return to his cell, cover up, and fill out a kite requesting medical assistance the following morning. (*Id*.) Harraway "waited two days," until February 12th, to call a code two when plaintiff's "condition was getting worse." (*Id*.) Plaintiff later filed a grievance consistent with these allegations (Dkt. 57, Ex. 6) and herein challenges Harraway's failure to take action earlier in response to his serious medical need.

## DISCUSSION

Summary judgment is appropriate when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of showing the district court "there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. The moving party can carry this burden by producing affirmative evidence negating an essential element of the nonmovant's case, or by establishing the nonmovant lacks the quantum of evidence needed to satisfy its burden of persuasion at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The burden then shifts to the nonmoving party to establish a genuine issue of material fact. *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must draw all reasonable inferences in favor of the nonmoving party. *Id.* at 585-87.

In supporting a factual position, a party must "cit[e] to particular parts of materials in the record . . .; or show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 585. "[T]he requirement is that there be no *genuine* issue of material fact. . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

The opposing party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). A mere scintilla of evidence does not suffice to defeat summary judgment. *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Nor can the nonmoving party rely on allegations in the complaint or unsupported conjecture or conclusory statements. *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).

A.      <u>Section 1983 Standard</u>

Plaintiff raises a claim pursuant to 42 U.S.C. § 1983. In order to sustain a § 1983 claim, plaintiff must show (1) he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a person acting under color of state

REPORT AND RECOMMENDATION
PAGE - 4

or federal law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Plaintiff must allege facts showing how individually named defendants caused or personally participated in causing the harm alleged in the complaint. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). The causation element may be satisfied by demonstrating a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act the person was legally required to do that caused the alleged deprivation of a constitutional right. *Id*. (citing *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

B.  Deliberate Indifference in Medical Care Standard

Plaintiff alleges a constitutional violation associated with his medical care. Because plaintiff challenges conduct occurring during his confinement as a pretrial detainee, his rights derive from the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). While the Eighth Amendment proscribes cruel and unusual punishment for convicted inmates, the Due Process Clause proscribes any punishment of pretrial detainees. *See Redman v. County of San Diego*, 942 F.2d 1435, 1441 n.7 (9th Cir. 1991). *Accord Bell*, 441 U.S. at 535 ("[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law.")

The Court applies a deliberate indifference standard in considering claims relating to medical care. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1241 (9th Cir. 2010), *overruled in part on other grounds in Castro v. County of Los Angeles*, 833 F.3d 1060, 1070-71 (9th Cir. 2016), *cert. denied*, 137 S. Ct. 831, 97 L. Ed. 2d 69 (2017). A prisoner or pretrial detainee must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle,* 429 U.S. at 106. A serious medical need exists if the failure to treat an inmate's condition "could result in further significant

injury or the 'unnecessary and wanton infliction of pain.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997)).

The Court evaluates a pretrial detainee's Fourteenth Amendment claim alleging a violation of the right to adequate medical care under an objective deliberate indifference standard. *Gordon v. County of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018) (citing *Castro*, 833 F.3d at 1070).[1] A plaintiff must demonstrate: (1) the defendant made an intentional decision with respect to conditions under which the plaintiff was confined; (2) the conditions put plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable measures to abate the risk, "even though a reasonable official in the circumstances would have appreciated the high degree of risk involved – making the consequences of the defendant's conduct obvious;" and (4) by not taking such measures, the defendant caused plaintiff injury. *Id*. at 1125.

As to the third element, the defendant's conduct must be objectively unreasonable, which turns on the facts and circumstances of each particular case. *Id*. A "'mere lack of due care'" does not suffice to establish a constitutional violation. *Id*. (quoting *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986)). *See also Estelle*, 429 U.S. at 105-06 (a constitutional violation is not established by negligence or "an inadvertent failure to provide adequate medical care[.]"; "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") A pretrial detainee "must 'prove more than negligence but less than subjective intent – something akin to reckless disregard.'" *Gordon*, 888 F.3d at 1125 (quoting *Castro*, 833 F.3d at 1071).

---

[1] Previously, "all conditions of confinement claims, including claims for inadequate medical care, were analyzed under a subjective deliberate indifference standard whether brought by a convicted prisoner under the Eighth Amendment or pretrial detainee under the Fourteenth Amendment." *Gordon*, 888 F.3d at 1122-23 (citing *Clouthier*, 591 F.3d at 1242-43).

Therefore, unlike a prisoner who must, under the Eighth Amendment, show a defendant knew of and disregarded an excessive risk to inmate health and safety, a pretrial detainee "'need not prove those subjective elements about the [defendant]'s actual awareness of the level of risk.'" *Id.* at 1125, n. 4 (quoting *Castro*, 833 F.3d at 1071).

The delay of or interference with medical treatment for a serious medical need can amount to deliberate indifference. *Jett*, 439 F.3d at 1096; *McGuckin*, 974 F.2d at 1059-60. However, the inmate must show the delay caused further injury. *Id.*

C.   Plaintiff's Claim Against Defendant Harraway

Defendant Harraway rejects plaintiff's allegation of deliberate indifference. He describes the medical evidence as indicating plaintiff had been experiencing symptoms for about one day as of February 10, 2018, that the symptoms came and went, and that plaintiff was eating and drinking normally and was not nauseated. (*See* Dkt. 57, Ex. 4 at 1.) He notes the absence of any documentation showing plaintiff asked for care prior to February 12, 2018. (*Id.*, Ex. 2 (logbook entries dated February 10-12, 2018)). However, even assuming plaintiff did complain about his symptoms on February 10th, defendant argues a reasonable officer in his position could have justifiably believed the complaint did not warrant an emergency response at that time, and that advising plaintiff to kite for medical care the following morning was a reasonably safe alternative. He avers any mistake or incorrect assessment would amount to no more than negligence, not deliberate indifference. The Court, for the reasons set forth below, agrees with defendant.

The Court assumes for purposes of considering defendant's dispositive motion that plaintiff complained to Harraway on February 10th and that Harraway took no action, at that time or at any point prior to February 12th, other than advising plaintiff to kite for medical care.[2] In so doing,

---

[2] The logbook shows Harraway on duty in E-Unit from 2:30 p.m. until 10:30 p.m. on both February

REPORT AND RECOMMENDATION
PAGE - 7

Harraway made an intentional decision regarding the conditions of plaintiff's confinement. Plaintiff, however, fails to set forth significant, probative evidence supporting his satisfaction of the remaining elements of the deliberate indifference standard.

A nurse conducts "triage" at each RJC housing location once per day, meaning the nurse is available to see inmates about their medical needs. (Dkt. 58, ¶3.) While inmates do not require a scheduled appointment to see the triage nurse, they must complete a medical kite at the time of the triage visit. (*Id*.) The log book shows the presence of a nurse on deck for medication passes and triage on some ten different occasions beginning early in the morning on February 10th and continuing through plaintiff's pain compliant in the evening of February 12th (Dkt. 57, Ex. 2), as well as more than one "medical status 2" reported within that time frame (*id*. at 3-4, 9). Also, plaintiff's cell contained a "call button" enabling him to notify jail staff in the event of a medical concern or emergency. (Dkt. 58, ¶4.)

Plaintiff does not allege Harraway prevented him from seeking medical treatment. His allegation of deliberate indifference rests on the fact Harraway declined to call for an emergency on February 10th and instead recommended plaintiff file a medical kite to receive treatment the following morning. The evidence shows plaintiff chose not to file a kite requesting treatment after complaining to Harraway. Specifically, he refused to file a kite because "it takes to [sic] long to be seen[.]" (Dkt. 57, Ex. 4 at 1.) Plaintiff concedes this failure to further seek medical treatment, explaining: "I did not put in a kite so I could be seen on the next day because I wanted and needed the attention right then on the spot[.]" (Dkt. 61 at 23.) This admission undermines the allegation it was Harraway's response or inaction that put plaintiff at risk of suffering serious harm, that a

---

11th and 12th. (Dkt. 57, Ex. 2 at 5-7, 10-11.) Although it identifies other correctional officers as on duty in the unit on February 10th, Harraway's identification number is associated with a "med pass" on that date at 10:17 p.m. (*Id*. at 3 ("#97637").)

REPORT AND RECOMMENDATION
PAGE - 8

reasonable official would have appreciated the high risk involved in not calling for emergency medical care, and that inaction or delay on the part of Harraway caused plaintiff injury.[3] Plaintiff's choice to not submit a kite requesting medical treatment supports an inference that he, like Harraway, did not at that time perceive his condition necessitated or warranted emergency care.

Other factors detract from plaintiff's contention of an apparent emergent need prior to February 12th. There is no evidence plaintiff otherwise complained or sought medical assistance from a triage nurse or any other RJC employee or through use of his cell's call button up until the February 12th complaint resulting in his prompt receipt of medical care. The evidence further shows that, while plaintiff began to experience pain on or about February 9th and his pain level ultimately increased to the point his need for emergency care became clear, he had been eating and drinking up until February 12th, with one instance of vomiting on the date. (Dkt. 57, Ex. 4 at 1 and Ex. 5 at 1 (February 12, 2018 VMC medical record reflecting three-day history of abdominal pain, "now 10/10 and . . . unbearable[,]" "no change in bowel or bladder habits[,]" "has been somewhat nauseated but did eat dinner tonight around 6 PM[,]"and care received following report to jail provider "he was having worsening pain."))

In a revised declaration submitted in response to defendant's revised motion, plaintiff added an allegation of experiencing nausea and vomiting as early as February 10th. (Dkt. 61 at 2.) He elsewhere appears to state he again complained to Harraway on February 11th. (*Id*. at 23.) In another document, plaintiff states he "could not even get out of bed" when he requested the code two and therefore did push the call button in his cell, but it did not work because it can be

---

[3] As stated above, an inmate must show further injury resulting from a delay of medical treatment. *See Jett*, 439 F.3d at 1096, and *McGuckin*, 974 F.2d at 1059-60. Here, while plaintiff's filings contain statements regarding, for example, nerve damage and clotting in the veins of his thighs (Dkt. 8-1 at 16) and issues with his kidneys (Dkt. 17), these issues do not appear to have any relation to his claim Harraway was deliberately indifferent in responding to plaintiff's initial complaint of pain.

REPORT AND RECOMMENDATION
PAGE - 9

locked out or controlled by RJC personnel.  (Dkt. 39 at 8.)

Plaintiff's belated assertions are unaccompanied by evidentiary support and inconsistent with his prior allegations and the evidence before the Court.  (*See, e.g.*, Dkt. 72, Ex. 4 at 1 (February 12, 2018: "vomiting x1 this AM") and Ex. 6 at 1 (grievance states he complained about pain on February 10th and 12th); Dkt. 48 at 2 and Dkt. 61 at 2 (asserting Harraway "directed me to go back to my cell").)  Conclusory allegations in legal memoranda are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist.  *See Taylor v. List*, 880 F.2d 1040, 1045-46 (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data."); *see also Hernandez*, 343 F.3d at 1112 (allegations in complaint, unsupported conjecture, or conclusory statements do not suffice to defeat summary judgment).  As such, the absence of evidence showing plaintiff sought any assistance after his initial pain complaint and the documentation of his symptoms up until his receipt of medical care further detract from his allegation of deliberate indifference.

In sum, while there is no doubt plaintiff had a serious medical need, the evidence shows Harraway took immediate action when it was apparent that need existed.  The evidence, at best, supports the conclusion Harraway's failure to call for a medical emergency two days prior to plaintiff's hospitalization amounted to negligence, not something akin to reckless disregard.  *See, e.g., LaRue v. Gusman*, No. 10-2701, 2010 U.S. Dist. LEXIS 137863 at *14-15 (E.D. La. Dec. 8, 2010) (facts alleged by prisoner with ruptured appendix negated any inference of deliberate indifference: "He was seen by a nurse within two days after he first experienced pain. His temperature was near normal and she gave him Pepto-Bismol for what she believed was mere abdominal upset. Although . . . not subsequently treated for five days, he was ultimately taken to the hospital for emergency treatment, including surgery, then kept in the jail medical unit post-

surgery[,]" and "given medication and other post-surgical attention[.]"; "While it is clear from his allegations and testimony that he is not satisfied with the speed or nature of his medical care, and that he experienced some delay in his initial treatment, no finding of deliberate indifference can be made based on this record.")  *Cf. Rosen v. Chang*, 758 F. Supp. 799, 801-02 (D. R.I. 1991) (inmate stated a claim sufficient to survive a motion to dismiss with "allegation that repeated complaints of abdominal pain were improperly diagnosed as an upset stomach and treated with 'Metamucil,' when in fact the decedent was suffering from acute appendicitis, which ailment ultimately caused his death.")  The Court finds no genuine issue of material fact and defendant entitled to a judgment as a matter of law.[4]

## CONCLUSION

For the reasons explained above, the Court recommends defendant's revised motion for summary judgment (Dkt. 56) be GRANTED and this case DISMISSED with prejudice.  A proposed Order accompanies this Report and Recommendation.

## OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **August 9, 2019**.

---

[4] Defendant also argues his entitlement to qualified immunity.  Because the Court recommends granting the motion due to a lack of any constitutional violation, it declines to consider the qualified immunity argument.

DATED this 12th day of July, 2018.

_Mary Alice Theiler_
Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 12